Case 3:23-cv-00167   Document 129   Filed on 11/07/25 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
November 07, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

|  |  §  |  |
|---|---|---|
| IN RE M/V AET EXCELLENCE AND | § | |
| M/V AET INNOVATOR | § | CIVIL ACTION NO. 3:23-cv-00167 |
| | § | |
| | § | |

# ORDER, MEMORANDUM AND RECOMMENDATION

Pending before me in this consolidated triple limitation proceeding are three motions for summary judgment and a motion to bifurcate. *See* Dkts. 71, 74, 75, 103. The first motion for summary judgment is filed by Third-Party Defendants Harbor Offshore Marine, Inc. ("HOM") and M/V *Excalibur* against Limitation Petitioners/Claimants AET.[1] *See* Dkt. 71. The second motion for summary judgment is filed by AET against Claimants/Plaintiffs Jose Uresti and Gerald Arukwe ("Plaintiffs"). *See* Dkt. 74. The third motion for summary judgment is filed by AET against Limitation Petitioner/Claimant/Third-Party Plaintiff T&T Offshore Services, Inc. *See* Dkt. 75. Finally, Plaintiffs seek to limit the first phase of trial in this matter to only the issues of negligence/unseaworthiness, privity and knowledge, and fault apportionment. *See* Dkt. 103.

Having reviewed the briefing, the record, the applicable law, and having heard oral argument on AET's two motions for partial summary judgment and Plaintiffs' motion to bifurcate, I deny the motion to bifurcate and recommend that all three motions for summary judgment be denied, with one exception. The court should grant AET's motion for partial summary judgment as to Plaintiffs' unseaworthiness claim against AET for the December 7, 2022 incident. All remaining issues between the 12 parties in this matter should proceed to trial.[2]

---

[1] "AET" includes AET Lightering Services LLC; AET Offshore Services, Inc.; the M/V *AET Excellence*; and the M/V *AET Innovator*.

[2] The other parties, which have a stake only in the motion to bifurcate, are the M/V *Northern Magnum*, Beteiligungs-Kommanditgesellschaft MS, and V.Ships (Hamburg) GmbH & Co.KG. (collectively, "the Northern Magnum Interests").

## BACKGROUND

AET provides offshore lightering services to other vessels. AET is the owner and operator of the M/V *AET Excellence*. Plaintiffs were employed by AET. Uresti was a mooring master assistant, and Arukwe was an able seaman.

T&T provides offshore crew transfer services. AET hired T&T to take the off-signing crew of the *AET Excellence* to shore on December 7, 2022.

Around 10:30 a.m. on December 7, 2022, Plaintiffs disembarked the *AET Excellence* and boarded T&T's vessel, the M/V *Hunter T*, to return to AET's dock in Galveston, Texas. There were ten AET crew members and three T&T personnel onboard the *Hunter T*. T&T's two captains and a deckhand oversaw navigating and operating the vessel.

The return journey takes approximately four hours. There are three levels to the *Hunter T*: the wheelhouse, where the captain at the helm navigates the ship; the main deck; and the lower deck. Throughout the return voyage, Plaintiffs were seated on the main deck level. The T&T crew members who were operating and navigating the *Hunter T* were in the wheelhouse.

The *Hunter T* captain traversed the Galveston anchorage. Upon arriving at the anchorage, the *Hunter T* encountered heavy fog, limiting visibility to roughly 100 feet. Throughout this time, the *Hunter T* was traveling between 14 and 17 knots. At some point, the *Hunter T*'s radar identified two ships near the *Hunter T*, but T&T Second Captain Hughes believed the ships were anchored because they did not appear to be moving. The *Hunter T* did not communicate with these vessels about their positioning.

At approximately 1:15 p.m., one of the vessels, the *Northern Magnum*, resumed its voyage. At roughly 1:20 p.m., the *Northern Magnum*'s radar detected the *Hunter T.*, but the *Northern Magnum*'s captain could not identify the vessel. The *Northern Magnum* observed that the *Hunter T* was frequently changing directions. Eventually, the *Northern Magnum*'s radar showed that the *Hunter T* was heading straight for the *Northern Magnum*.

Around 1:26 p.m., the *Hunter T* collided with the *Northern Magnum*. After the impact, the *Hunter T* crew members and AET Captain Han asked the AET crew members whether they were injured. None of the crew members reported injuries at the time of the incident. After both vessels concluded that they were safe to resume their voyages, the *Hunter T* arrived at the AET dock around 3:00 p.m. The AET crew was asked a second time if they sustained any injuries from the collision. They all replied "no."

The following month, on January 4, 2023, Arukwe was aboard the *Excalibur*—a crew boat owned and operated by HOM—during a crew transfer from shore to the *AET Innovator* via a boat-to-boat transfer. AET's Captain Kyaw Han and Training Captain LeighAhn Ferrari were also aboard the *Excalibur*. Uresti was not aboard the *Excalibur* or involved with the events of January 4, 2023.

The boat-to-boat transfer involved the AET crewmembers boarding the *AET Innovator* via a small platform and ladder that were attached to the *AET Innovator*. To initiate the transfer, AET would create a lee by contacting larger vessels in the area—often owned and/or operated by AET—where the transfer was to occur, which would then block the wind and create calmer sea conditions for the transfer. It was AET's duty to coordinate with the other vessels and create the lee. If unsafe conditions existed, all AET crewmembers aboard the *Excalibur* had stop-work authority to halt the transfer operation or decline to complete the transfer if they believed it to be unsafe.

On January 4, 2023, while Arukwe was boarding the *AET Innovator* via the platform, the ladder came out of the holes and detached from the *AET Innovator*, causing Arukwe to lose his balance and fall between the vessels. The platform and ladder were connected to the *AET Innovator*. No part of the platform or ladder was connected to or touching the *Excalibur*.

Following the incident, Captain Han and Training Captain Ferrari completed an Initial Notice Report, which attributed fault for the incident to the *AET Innovator*'s off-signing crew and AET's Mooring Master, reporting that they

3

"did not prepare an appropriate lee for crew boat transfer." Dkt. 71-4 at 3. AET then completed a more formal investigation into the incident, ultimately issuing a notice to all global operations personnel that the incident "was a result of the boarding platform ***NOT*** being secured to the LSV and the handrail not pinned in place." Dkt. 71-5 at 2.

On March 14, 2023, Plaintiffs filed a suit against AET and T&T in the 270th Judicial District Court of Harris County, Texas, alleging claims under the Jones Act and for negligence. Plaintiffs seek damages for injuries to their neck, back, and legs, which they claim to have sustained during the December 7, 2022 collision. Arukwe claimed that he also sustained injuries during the January 4, 2023 incident. Arukwe did not name HOM or the *Excalibur* in the state court lawsuit.

On June 6, 2023, AET instituted this limitation proceeding. On July 18, 2023, T&T instituted its own limitation action. *See* No. 3:23-cv-222 (S.D. Tex.) ("T&T Limitation"). On September 12, 2023, the Court consolidated the AET and T&T Limitations. *See* Dkt. 20. On March 15, 2024, HOM filed for limitation. *See* No. 3:24-cv-74 (S.D. Tex.) ("HOM Limitation"). The court consolidated the HOM Limitation with this case on March 19, 2024. *See* Dkt. 42.

AET has filed claims for contribution and indemnity in the HOM Limitation and T&T Limitation. *See* Dkt. 47 and Dkt. 11 (T&T Limitation). The T&T Interests have similarly filed claims for contribution and indemnity in the AET Limitation. *See* Dkt. 13. The Northern Magnum Interests have filed a claim for contribution and indemnity in the T&T Limitation. *See* Dkts. 44–45.

On August 14, 2023, Plaintiffs filed their answer/counterclaim. *See* Dkt. 15. In their counterclaim, Plaintiffs allege that they are Jones Act seamen. *See id.* at 10. On August 29, 2025, AET filed its answer to Plaintiffs' counterclaim, admitting that "Arukwe was a Jones Act seaman employed by AET Offshore at the time of the underlying incidents," and that "Uresti was a Jones Act seaman employed by AET Offshore at the time of the underlying incident." Dkt. 16 at 1–2.

On January 14, 2025, Plaintiffs' state court action was dismissed for want of prosecution. *See* Dkt. 114-1.[3]

This court's December 5, 2024 Order set a July 10, 2025 deadline for pretrial motions. *See* Dkt. 58 at 1. Two weeks after that deadline, without a live state court action to which they could return, Plaintiffs filed the instant motion to bifurcate. *See* Dkt. 103. On August 15, 2025, AET filed its response to Plaintiffs' motion to bifurcate, observing that "the state court case has been dismissed." Dkt. 113 at 5; *see also* Dkt. 114-1 (Order of Dismissal). On August 20, 2025—without seeking leave of this court and in contravention of this court's June 7, 2023 Order restraining the filing of suits against AET—Plaintiffs filed a new complaint against AET in Harris County state court. *See* Dkt. 117-6.

Discovery is complete. HOM has moved for summary judgment as to AET's claims for contribution and indemnity, arguing that there is no evidence that HOM was negligent in its operation of the *Excalibur*. *See* Dkt. 71. AET has moved for partial summary judgment as to Plaintiffs and T&T. *See* Dkts. 74, 75. AET seeks exoneration from liability for the December 7, 2022 incident, arguing that there is no evidence that AET was negligent, and that AET is not liable to Plaintiffs for the negligence of T&T, an independent contractor. In the alternative, AET seeks indemnification or contribution from T&T, and to limit its liability as to Plaintiffs. AET also seeks judgment on Plaintiffs' unseaworthiness claim for the December 7, 2022 incident. Finally, Plaintiffs seek to bifurcate the trial in this matter, limiting the first phase solely to the issues of negligence/unseaworthiness, privity and knowledge, and fault apportionment.

---

[3] This dismissal violated this court's June 7, 2023 Order, which "stayed, restrained, and enjoined" the "filing, commencement and/or further prosecution of any and all suits" against AET, including Plaintiffs' state court action. Dkt. 6 at 3. Alas, federal courts lack jurisdiction to alter the judgments of state courts. *See Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994) ("Federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." (citation modified)).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "No genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hosp. of Dall., Inc.*, 478 F.3d 255, 260 (5th Cir. 2007). The same standard applies to partial summary judgment, which serves "to root out, narrow, and focus the issues" prior to trial. *Calpetco 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993).

"The moving party bears the initial burden of showing that there is no genuine issue for trial." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). "[I]f the movant bears the burden of proof on an issue . . . , he must establish beyond peradventure *all* of the essential elements of the [claim or affirmative] defense to warrant judgment in his favor." *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011) (quotation omitted).

Where the movant does not bear the burden of proof, his burden is satisfied by showing that the other party has a "failure of proof on an essential element of its claim [or affirmative defense]." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020). A party makes this showing by introducing evidence or by "pointing out . . . an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the [movant] succeeds on that showing, the burden shifts to the [nonmovant] to demonstrate that there *is* a genuine issue of material fact and that the evidence favoring the [nonmovant] permits a jury verdict in the [nonmovant]'s favor." *Joseph*, 981 F.3d at 329. The parties satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence

supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). In evaluating whether summary judgment is appropriate, I "consider all of the evidence in the record, but [I] do not make credibility determinations or weigh the evidence." *Austin v. Will-Burt Co.*, 361 F.3d 862, 866 (5th Cir. 2004). A trial court may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

### A. AS TO HOM'S MOTION AGAINST AET, AND AET'S MOTION AGAINST T&T, THE BETTER COURSE IS TO PROCEED TO A FULL TRIAL

If ever a case were not suitable for summary judgment, it is this case. The questions of Plaintiffs' own liability and damages, if any, are not currently before the court. As to the December 7, 2022 incident specifically, both AET and T&T will argue: (1) that neither Plaintiff was injured; and (2) as to Arukwe, that any injury Arukwe suffered is not a result of the December 7, 2022 incident. *See, e.g.*, Dkt. 74 at 10–11; Dkt. 82 at 14. Similarly, as to the January 4, 2023 incident, both AET and HOM will argue that Arukwe bears the fault for any injury he suffered. *See, e.g.*, Dkt. 35 at 2–3; Dkt. 71 at 5, 7, 22–23; Dkt. 83 at 5 ("to the extent fault lies not entirely with Arukwe himself"). The significant extent to which liability and damages are intertwined in this case makes summary judgment—and bifurcation—inappropriate.

Even if I granted HOM's motion for summary judgment against AET, or AET's motion for summary judgment against T&T, that would not establish Plaintiffs' liability or damages, both of which are antecedent questions to AET's claims for contribution and indemnity against HOM and T&T. HOM's motion for partial summary judgment as to AET's contribution and indemnity claims presents a moot question if Arukwe is, as AET argues, entirely at fault for any injuries sustained on January 4, 2023. *See* Dkt. 83 at 5. Similarly, AET's motion for partial summary judgment as to AET's contribution and indemnity claims against T&T is

7

rendered moot if, as both AET and T&T argue, Plaintiffs were not injured as a result of the December 7, 2022 incident. At this stage, there is simply no need for the court to decide questions it may never need to reach. That Plaintiffs' liability and damages must be established at trial is a sufficient reason to deny HOM's motion for partial summary judgment against AET, and AET's motion for partial summary judgment against T&T.

During oral argument, AET suggested that even if Plaintiffs suffered no damages, T&T would still owe AET contribution and indemnity for the maintenance and cure payments that AET has made to Plaintiffs. This is a perplexing argument given AET's assertion in its reply brief that "neither [Plaintiff] plead facts demonstrating they are Jones Act seamen." Dkt. 87 at 8. In a footnote, AET contends that it "expects to prove at trial that Uresti is not a Jones Act seaman." *Id.* at n.3. I struggle to understand why I should wade into whether T&T owes AET contribution and indemnity for maintenance and cure when AET says that Uresti is not even entitled to maintenance and cure because he is not a Jones Act seaman. As for Arukwe, the factfinder may determine that Arukwe's injuries, if any, and the resulting maintenance and cure are due solely to the January 4, 2023 incident, in which T&T was not involved. Until those facts are established, I see no need to reach the question of whether T&T owes AET contribution and indemnity. The better course here is to proceed to trial.

B. **AET'S MOTION AGAINST PLAINTIFFS SHOULD BE DENIED IN PART AND GRANTED IN PART**

  1. *The Motion Should Be Denied as to AET's Claims for Exoneration or Limitation*

On AET's motion for partial summary judgment against Plaintiffs, there is a genuine dispute of material fact—created by AET—as to whether Plaintiffs are Jones Act seamen and thus entitled to the negligence standard set forth in *Hopson v. Texaco, Inc.*, 383 U.S. 262 (1966). Under *Hopson*, a Jones Act employer is "liable for the injuries negligently inflicted on its employees by its officers, agents, or employees." 383 U.S. at 263 (quotation omitted). In *Hopson*, one seaman was

injured and another died when a taxi driver, hired by Texaco to transport its injured seamen from port to a United States Consul office, got into an automobile accident. The Supreme Court held Texaco liable for the taxi service's negligence, notwithstanding that the taxi service operated under a contract with Texaco. *Id.* at 264. Thus, if Plaintiffs are Jones Act seamen, then under *Hopson*, AET would be liable for T&T's negligence (if any). The best arguments that AET has against this straightforward application of the law is that Plaintiffs are not Jones Act seamen, and Plaintiffs did not argue for *Hopson*'s application in their summary judgment response. Both of AET's arguments are unavailing.

First, AET argues on summary judgment that Plaintiffs are not Jones Act seamen. Yet, when AET answered Plaintiffs' counterclaim, AET answered that "Arukwe was a Jones Act seaman employed by AET Offshore at the time of the underlying incidents," and that "Uresti was a Jones Act seaman employed by AET Offshore at the time of the underlying incident." Dkt. 16 at 1–2. AET's conflicting positions create a genuine dispute of material fact as to whether Plaintiffs are Jones Act seamen.

Second, during oral argument, AET admitted that had Plaintiffs raised the argument themselves, *Hopson* would preclude summary judgment. *See* Dkt. 127 at 14. While Plaintiffs' counsel certainly should have argued that point, his failure to raise it does not prevent me from considering it. If a district court can *grant* summary judgment sua sponte, it can certainly deny summary judgment for a reason not raised by the nonmovant. *See Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770 ("[I]t is well-settled that a district court may grant summary judgment *sua sponte*, so long as the losing party has ten days notice to come forward with all of its evidence in opposition to summary judgment." (quotation omitted)); *see also U.S. Nat. Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing

law." (citation modified)). Thus, AET's motion for partial summary judgment against Plaintiffs should be denied as to AET's claims for exoneration and limitation.

### 2. *The Motion Should Be Granted as to Plaintiffs' Unseaworthiness Claim Against AET*

Although AET's motion for partial summary judgment regarding exoneration and limitation should be denied, AET should be granted summary judgment on Plaintiffs' unseaworthiness claim against it for the December 7, 2022 incident. "General maritime law imposes a duty upon shipowners to provide a seaworthy vessel." *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020) (quotation omitted). "Liability under the doctrine of unseaworthiness does not rest upon fault or negligence." *Johnson v. Offshore Exp., Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988). "For a vessel to be found unseaworthy, the injured seaman must prove that the owner has failed to provide a vessel, *including her equipment and crew*, which is reasonably fit and safe for the purposes for which it is to be used." *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001) (emphasis added). "In addition, the plaintiff must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy." *Id.*

AET contends that Plaintiffs' unseaworthiness claim against it for the December 7, 2022 incident should be dismissed because no AET vessel was involved in the December 7, 2022 incident and Plaintiffs were not seamen on the *Hunter T. See* Dkt. 74 at 20–21. Plaintiffs do not explicitly address their unseaworthiness claim in their response. They do, however, argue that Captain Han was negligent in failing "to prevent an imminent incident." Dkt. 81 at 11.[4] I construe this to be an argument that AET provided an unfit crew—specifically, that Captain Han himself created an unseaworthy condition.

---

[4] At oral argument, Plaintiffs' counsel confirmed that, despite being styled as a response to AET's motion for partial summary judgment *as to T&T*, Plaintiffs' response was meant to be a response to AET's motion for partial summary judgment against Plaintiffs.

The Fifth Circuit has described the circumstances in which a crewmember's actions might create a condition of unseaworthiness:

> A longshoreman or one of his fellows might engage in a *congeries* of negligent acts that are of such a character or that continue for such a length of time that they become related to the status of the vessel. That *congeries* of acts might create a "condition" of unseaworthiness, so that an individual act of negligence within or after the *congeries* might give rise to liability under the unseaworthiness doctrine. However, if the negligent act of a longshoreman is not part of any *congeries* of negligent acts connected to the status of the vessel or to its loading but is rather an isolated "instantaneous" act of negligence within an otherwise seaworthy method of loading on an otherwise seaworthy vessel, then that one act of negligence by the longshoreman or his fellows will not render the vessel unseaworthy.

*Robinson v. Showa Kaiun K. K.*, 451 F.2d 688, 690 (5th Cir. 1971).

Construing Plaintiffs' response brief as favorably as possible, they seem to argue that Captain Han's negligence created a condition of unseaworthiness because Captain Han "noticed that Captain Hughes was not safely navigating" and failed to intervene. Dkt. 81 at 5. Even if true, this is not "an individual act of negligence within or after [a] *congeries*" of negligent acts. *Robinson*, 451 F.2d at 690. Assuming Captain Han knew about an unsafe condition and had a duty to intervene, his failure to do so is nothing more than an "isolated, personal negligent act." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 500 (1971). "To hold that this individual act of negligence rendered the ship unseaworthy would be to subvert the fundamental distinction between unseaworthiness and negligence that [the United States Supreme Court has] so painstakingly and repeatedly emphasized." *Id.*

Because Plaintiffs have failed to create a genuine dispute of material fact as to whether AET furnished a vessel, equipment, and crew reasonably fit and safe for its intended purposes, AET is entitled to summary judgment on Plaintiffs' unseaworthiness claim for the December 7, 2022 incident.

C.   **PLAINTIFFS' MOTION TO BIFURCATE**[5]

Plaintiffs' motion to bifurcate was filed without leave of court after the July 10, 2025 deadline for pretrial motions set by this court's December 5, 2024 Order. Plaintiffs' only explanation for their untimely motion is that it was an "inadvertent mistake" that was "due to an internal oversight." Dkt. 117 at 12–13. The Fifth Circuit has held that an explanation of "inadvertence" is "tantamount to no explanation at all." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003) (holding that it was not an abuse of discretion for district court to deny untimely motion where party "offered no adequate explanation for its failure to comply with the scheduling order"). This inadvertent mistake is an independent and sufficient reason to deny Plaintiffs' motion to bifurcate. *See id.*

Even if I were to reach the merits of the motion, I would still deny it. As a lawyer, I understand why Plaintiffs' counsel filed another state court lawsuit on August 20, 2025. But as a judge, I simply cannot recognize as valid a proceeding filed in violation of this court's June 7, 2023 Order. Plaintiffs' original state court action was dismissed for want of prosecution. *See* Dkt. 114-1. Because Plaintiffs have no lawfully filed state court action to which they could return, their motion to bifurcate is denied.

Finally, I agree with Defendants that the issues of liability, causation, and damages in this consolidated triple limitation proceeding, which involves two personal injury plaintiffs and six defendants across two separate and distinct incidents, are inextricably intertwined. This is not the type of case in which bifurcation makes sense.

\* \* \*

For all these reasons, Plaintiffs' motion to bifurcate (Dkt. 103) is denied.

---

[5] A motion to bifurcate is a nondispositive pretrial matter on which a magistrate judge may rule by opinion and order. *See, e.g.*, *Mahoney v. Ernst & Young LLP*, 487 F. Supp. 2d 780, 798 (S.D. Tex. 2006).

## CONCLUSION

For the reasons discussed above, I recommend that all three pending motions for summary judgment (Dkts. 71, 74, 75) be denied, with one exception. The court should grant AET's motion for partial summary judgment as to Plaintiffs' unseaworthiness claim against AET. All other issues between the 12 parties in this consolidated triple limitation proceeding should proceed to trial.

Plaintiffs' motion to bifurcate (Dkt. 103) is denied.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 7th day of November 2025.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE